IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF SOUTH CAROLINA

| | | |
|---|---|---|
| Curtis L. King, | ) | C/A No. 0:15-2358-RBH-PJG |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | |
| | ) | **ORDER AND** |
| Official McPherson, *Lee Corr Inst*; Sgt. | ) | **REPORT AND RECOMMENDATION** |
| Boatwright, *Lee Corr Inst*; Shake Down Team | ) | |
| *at Lee Corr Inst/Turbeville*; Capt. Pack, | ) | |
| *Turbeville Corr Inst*; Lt. Shannon, *Turbeville* | ) | |
| *Corr Inst*; Officer McElveen, *Turbeville Corr* | ) | |
| *Inst*; Officer Barnes, *Turbeville Corr Inst*; Lt. | ) | |
| Siebel, *Broad River Corr Inst*; Capt. | ) | |
| Washington, *Broad River Corr Inst*; Sgt. | ) | |
| Carlton Ashe; Sgt. Debra McFadden, | ) | |
| | ) | |
| Defendants. | ) | |
| _____ | ) | |

The plaintiff, Curtis L. King, a self-represented state prisoner, brings this civil rights action

pursuant to 42 U.S.C. § 1983 alleging a violation of his constitutional rights. This matter is before

the court pursuant to 28 U.S.C. § 636(b) and Local Civil Rule 73.02(B)(2) (D.S.C.) for a Report and

Recommendation on the defendants' motion for summary judgment.[1] (ECF No. 133.) Pursuant to

<u>Roseboro v. Garrison</u>, 528 F.2d 309 (4th Cir. 1975), the court advised King of the summary

judgment and dismissal procedures and the possible consequences if he failed to respond adequately

to the defendants' motion. (ECF No. 134.) King filed a response in opposition to the defendants'

---

[1] The court previously recommended (1) King's excessive force claim against Defendant Seibel that occurred at Turbeville Correctional Institution be dismissed and (2) Defendant Shake Down Team be dismissed. (ECF No. 111.) Additionally, although the court recommended that Defendant Washington's motion to dismiss be granted, King's unlawful search claim regarding this defendant is addressed on the merits, below.



motion (ECF Nos. 137 & 138), and the defendants replied (ECF No. 140).[2]  Having reviewed the parties' submissions and the applicable law, the court finds that the defendants' motion should be granted.

## BACKGROUND

King is an inmate currently housed at the Evans Correctional Institution of the South Carolina Department of Corrections ("SCDC").  However, the claims raised in King's Amended Complaint occurred during periods of time when King was housed at the Broad River Correctional Institution ("BRCI"), Lee Correctional Institution ("LCI"), and Turbeville Correctional Institution ("TCI"). Specifically, and as more fully discussed below, King alleges two separate excessive force claims involving chemical munitions, a conditions of confinement claim involving the alleged deprivation of clothing, a conditions of confinement claim involving an alleged deprivation of food, a Fourth Amendment claim alleging an unlawful search of his person, and a Fourth Amendment claim regarding his right to privacy in his cell.

## DISCUSSION

### A.   Summary Judgment Standard

Summary judgment is appropriate only if the moving party "shows that there is no genuine dispute as to any material fact and the [moving party] is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a).  A party may support or refute that a material fact is not disputed by "citing to particular parts of materials in the record" or by "showing that the materials cited do not establish

---

[2]  King also filed a sur-reply.  (ECF No. 143.)  As an initial matter, the court observes that the Local Civil Rules make no provision for sur-replies.  Additionally, the defendants have moved to strike King's sur-reply, as he did not seek leave of the court to file such a pleading and as his sur-reply raises allegations that are not properly before the court.  (See ECF No. 144 at 2.)  The court agrees.  Accordingly, King's sur-reply is hereby stricken from the record.



the absence or presence of a genuine dispute, or that an adverse party cannot produce admissible evidence to support the fact." Fed. R. Civ. P. 56(c)(1). Rule 56 mandates entry of summary judgment "against a party who fails to make a showing sufficient to establish the existence of an element essential to that party's case." Celotex Corp. v. Catrett, 477 U.S. 317, 322 (1986).

In deciding whether there is a genuine issue of material fact, the evidence of the non-moving party is to be believed and all justifiable inferences must be drawn in favor of the non-moving party. See Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 255 (1986). However, "[o]nly disputes over facts that might affect the outcome of the suit under the governing law will properly preclude the entry of summary judgment. Factual disputes that are irrelevant or unnecessary will not be counted." Id. at 248.

The moving party has the burden of proving that summary judgment is appropriate. Once the moving party makes this showing, however, the opposing party may not rest upon mere allegations or denials, but rather must, by affidavits or other means permitted by the Rule, set forth specific facts showing that there is a genuine issue for trial. See Fed. R. Civ. P. 56(c), (e); Celotex Corp., 477 U.S. at 322. Further, while the federal court is charged with liberally construing a complaint filed by a *pro se* litigant to allow the development of a potentially meritorious case, see, e.g., Cruz v. Beto, 405 U.S. 319 (1972), the requirement of liberal construction does not mean that the court can ignore a clear failure in the pleadings to allege facts which set forth a federal claim, nor can the court assume the existence of a genuine issue of material fact where none exists. Weller v. Dep't of Soc. Servs., 901 F.2d 387 (4th Cir. 1990).

**B.      Defendants' Motion for Summary Judgment**

**1.      Exhaustion of Administrative Remedies**

The defendants argue that King failed to exhaust his administrative remedies with regard to his claims. A prisoner must exhaust his administrative remedies as required by the Prison Litigation Reform Act ("PLRA"), specifically 42 U.S.C. § 1997e(a). Section 1997e(a) provides that "[n]o action shall be brought with respect to prison conditions under section 1983 of this title, or any other Federal law, by a prisoner confined in any jail, prison, or other correctional facility until such administrative remedies as are available are exhausted." This requirement "applies to all inmate suits about prison life, whether they involve general circumstances or particular episodes, and whether they allege excessive force or some other wrong." Porter v. Nussle, 534 U.S. 516, 532 (2002). Moreover, exhaustion is required even when a prisoner seeks remedies, such as money damages, that are not available in the administrative proceedings. See Booth v. Churner, 532 U.S. 731, 740-41 (2001). To satisfy this requirement, a plaintiff must avail himself of every level of available administrative review. See generally id. Those remedies neither need to meet federal standards, nor are they required to be plain, speedy, and effective. Porter, 534 U.S. at 524 (quoting Booth, 532 U.S. at 739). Satisfaction of the exhaustion requirement requires "using all steps that the agency holds out, and doing so *properly*." Woodford v. Ngo, 548 U.S. 81, 90 (2006) (quoting Pozo v. McCaughtry, 286 F.3d 1022, 1024 (7th Cir. 2002)) (emphasis in original). Thus, "it is the prison's requirements, and not the [Prison Litigation Reform Act], that define the boundaries of proper exhaustion." Jones v. Bock, 549 U.S. 199, 218 (2007). The defendants have the burden of establishing that a plaintiff failed to exhaust his administrative remedies. Anderson v. XYZ Corr. Health Servs., Inc., 407 F.3d 674, 683 (4th Cir. 2005).



Pursuant to South Carolina Department of Corrections policy, an inmate seeking to complain of prison conditions must first attempt to informally resolve his complaint. Next, an inmate may file a "Step 1 Grievance" with designated prison staff. If the Step 1 Grievance is denied, the inmate may appeal to the warden of his facility via a "Step 2 Grievance." Moreover, review from the South Carolina Administrative Law Court ("ALC"), a state executive-branch tribunal, is generally part of the available administrative remedies an inmate must exhaust.[3] S.C. Code Ann. § 1-23-500 ("There is created the South Carolina Administrative Law Court, which is an agency and court of record within the *executive* branch of the government of this State.") (emphasis added); see Furtick v. S.C. Dep't of Corr., 649 S.E.2d 35, 38 (S.C. 2007) (reaffirming that "the ALC has jurisdiction over all inmate grievance appeals that have been properly filed") (citing Slezak v. S.C. Dep't of Corr., 605 S.E.2d 506 (S.C. 2004)); see also SCDC Policy GA-01.12 (http://www.doc.sc.gov/pubweb/ (choose "Research," then choose "SCDC Policies," accept the disclaimer, then follow the "GA-01-12 — GA-01.12, 'Inmate Grievance System,' May 12, 2014" hyperlink) (last visited August 11, 2016)) ("As part of [SCDC's] final answer to a grievance, the inmate will be notified that any further appeal must be initiated within 30 days after receipt of [SCDC's] final answer. This appeal must be contained on the South Carolina Administrative Law Court 'Notice of Appeal' that will be attached to [SCDC's] final answer and must be sent to the Administrative Law Court.").

---

[3] South Carolina case law has established certain exceptions not applicable here. See Howard v. S.C. Dep't of Corr., 733 S.E.2d 211, 215-18 (S.C. 2012) (interpreting a post-Furtick statutory amendment to S.C. Code Ann. § 1-23-600(D) and holding that the ALC lacked jurisdiction over an inmate's appeal involving the loss of the opportunity to earn sentence-related credits and no state-created property or liberty interest); Travelscape, LLC v. S.C. Dep't of Rev., 705 S.E.2d 28, 38-39 & n.10 (S.C. 2011) (stating that the ALC is without jurisdiction to hear facial challenges to the constitutionality of a regulation or statute but may rule on as-applied challenges); Howard, 733 S.E.2d at 218 (applying the holding in Travelscape, LLC to challenges to prison policies).



While it appears that King filed Step 1 and Step 2 grievances for each of his claims,[4] the defendants argue that King failed to exhaust his administrative remedies with regard to all of his claims due to his failure to seek review of his Step 2 grievances by appealing to the Administrative Law Court.  In response to the defendants' motion, King appears to argue that he is not required to appeal to the Administrative Law Court.  (Pl.'s Resp. Opp'n Summ. J., ECF No. 137 at 1-2.) Accordingly, it does not appear that King properly appealed his grievances to the Administrative Law Court.  Those claims are therefore not exhausted and should be dismissed.  However, even if King were to have properly exhausted his administrative remedies, the defendants are nonetheless entitled to summary judgment for the reasons stated below.

### 2.    Official Capacity Claims

To the extent that King is suing the defendants in their official capacities for monetary relief, they are entitled to summary judgment.  The Eleventh Amendment states that "[t]he Judicial power of the United States shall not be construed to extend to any suit in law or equity, commenced or prosecuted against one of the United States by Citizens of another State, or by Citizens or Subjects of any Foreign State."  U.S. Const. amend. XI.  Sovereign immunity protects both the State itself and its agencies, divisions, departments, officials, and other "arms of the State."  See Will v. Michigan Dep't of State Police, 491 U.S. 58, 70 (1989); see also Regents of the Univ. of California v. Doe, 519 U.S. 425, 429 (1997) ("[I]t has long been settled that the reference [in the Eleventh Amendment] to

---

[4] The defendants also argue that King's grievances regarding his March 23, 2013 and April 23, 2014 excessive force claims focus mainly on the disciplinary convictions resulting from the force rather than the force itself.  Review of these grievances reveals that the portions of King's allegations that are legible do reference the administration of chemical munitions, "[E]ight[h] Amendment violation," "infliction for sole purpose of (pain)," and both Defendants Pace and Boatwright by name.  (See ECF Nos. 133-16 at 7, 9, 10, 12.)  Accordingly, the court is not inclined to recommend summary judgment on this basis.



actions 'against one of the United States' encompasses not only actions in which a State is actually named as the defendant, but also certain actions against state agents and state instrumentalities."). As arms of the state, the defendants, who are all SCDC employees, are entitled to sovereign immunity and cannot constitute "persons" under § 1983 in that capacity.  See Will, 491 U.S. at 70-71.  Although a State may waive sovereign immunity, Lapides v. Board of Regents, 535 U.S. 613 (2002), the State of South Carolina has specifically denied this waiver for suit in federal district court.  See S.C. Code Ann. § 15-78-20(e).  Accordingly, to the extent the defendants are sued in their official capacities for monetary damages, they are immune from suit.  Will, 491 U.S. at 70-71; see also Quern v. Jordan, 440 U.S. 332, 343 (1979) (recognizing that Congress did not override the Eleventh Amendment when it created the remedy found in 42 U.S.C. § 1983 for civil rights violations).

### 3.    Eighth Amendment—Excessive Force

The Eighth Amendment to the United States Constitution expressly prohibits the infliction of "cruel and unusual punishments."  U.S. Const. amend. VIII.  To proceed with his excessive force claim under the Eighth Amendment, King must demonstrate:  (1) objectively, the deprivation was sufficiently serious, and (2) subjectively, the prison officials acted with a "sufficiently culpable state of mind."  Wilson v. Seiter, 501 U.S. 294 (1991); Williams v. Benjamin, 77 F.3d 756, 761 (4th Cir. 1996).  "These requirements spring from the text of the amendment itself; absent intentionality, a condition imposed on an inmate cannot properly be  called 'punishment,' and absent severity, such punishment cannot be called 'cruel and unusual.' "  Iko v. Shreve, 535 F.3d 225, 238 (4th Cir. 2008) (citing Wilson, 501 U.S. at 298-300).



The "core judicial inquiry" in an excessive force claim under the Eighth Amendment is "whether force was applied in a good-faith effort to maintain or restore discipline, or maliciously and sadistically to cause harm." Wilkins v. Gaddy, 559 U.S. 34, 37 (2010) (quoting Hudson v. McMillian, 503 U.S. 1, 7 (1992)). "[N]ot . . . every malevolent touch by a prison guard gives rise to a federal cause of action." Hudson, 503 U.S. at 9. However, "[w]hen prison officials maliciously and sadistically use force to cause harm, . . . contemporary standards of decency always are violated . . . whether or not significant injury is evident. Otherwise, the Eighth Amendment would permit any physical punishment, no matter how diabolic or inhuman, inflicting less than some arbitrary quantity of injury." Wilkins, 559 U.S. at 37 (quoting Hudson, 503 U.S. at 9).

When analyzing the subjective element of excessive force claims, courts must determine if the defendant showed "wantonness in the infliction of pain." Whitley v. Albers, 475 U.S. 312, 322 (1986). To that end, they should consider factors such as (1) the necessity for the application of force; (2) the relationship between the need for force and the amount of force used; (3) the extent of the injury actually inflicted; (4) the extent of the threat to the safety of the staff and prisoners, as reasonably perceived by the responsible officials on the basis of the facts known to them; and (5) the efforts taken by the officials, if any, to temper the severity of the force applied. Id. at 321. Courts must give "wide-ranging deference" to the execution of policies and practices that in the judgment of the prison officials are necessary "to preserve internal order and discipline and to maintain institutional security." Id. at 321-22. The Supreme Court has recognized that prison officials work in an environment where there is an ever present potential for violence and unrest, and that courts should not substitute their judgment for that of the officials who must make a choice at the moment when the application of force is needed. Id. The deference owed to prison administrators extends



to "prophylactic or preventive measures intended to reduce the incidence of . . . breaches of prison discipline."  Id. at 322.

The United States Court of Appeals for the Fourth Circuit has addressed the use of chemical munitions in a prison setting.  See Williams v. Benjamin, 77 F.3d 756 (4th Cir. 1996); Bailey v. Turner, 736 F.2d 963, 969 (4th Cir. 1984).  In Bailey, the Fourth Circuit held that as long as the quantity of mace used is commensurate with the gravity of the occasion, its use does not violate the Constitution.  Specifically, the Bailey Court held that prison officials may use mace to compel the obedience of a recalcitrant prisoner.  Bailey, 736 F.2d at 969-70.  The Bailey Court found that the Eighth Amendment afforded prison officials the discretion to use mace on inmates to compel them to abide by prison rules, even if they did not pose an immediate physical threat.  Id.  Whether the use of chemical munitions on an inmate constitutes excessive force depends upon "the totality of the circumstances, the provocation, the amount of gas used, and the purposes for which the gas was used."  Id. at 969.  Furthermore, the Fourth Circuit has stated that "[a] limited application of mace may be much more humane and effective than a flesh to flesh confrontation with an inmate" and "because a limited use of mace constitutes a relatively mild response compared to other forms of force, the initial application of mace indicates a tempered response by the prison officials."  Williams, 77 F.3d at 763 (internal quotations marks and citation omitted).

### a.     March 25, 2013

King alleges that on March 25, 2013, while housed at TCI, Defendants Seibel,[5] Boatwright, and Pack used excessive force against him by spraying him with chemical munitions. (Am. Compl., ECF No. 5-1 at 5, 7.)  As an initial matter, the defendants provide affidavit testimony testifying, and King concedes, that Defendants Seibel and Boatwright were not employed at TCI on this date and were thus not involved in the March 25, 2013 incident.  (See Seibel Aff. ¶ 3, ECF No. 133-7 at 2; Boatwright Aff. ¶ 3, ECF No. 133-9 at 2; King Dep. 102-03, ECF No. 133-3 at 8-9.)  The parties appear to agree that, instead, Defendants Pack, Shannon, and Ashe were the defendants King intended to name regarding this incident.  (Defs.' Mem. Supp. Summ. J., ECF No. 133-1 at 15-16; King Dep. 119-20, ECF No. 133-3 at 9-10.)  King concedes that Defendant Pack was the only individual who deployed chemical munitions.  (King Dep. 120, ECF No. 133-3 at 10.)

The defendants provide affidavit testimony from Defendants Pack, Shannon, and Ashe, as well as incident reports and King's deposition testimony in support of their motion for summary judgment.  The defendants aver that, on the date of the incident, Defendants Pack, Shannon, and Ashe approached King's cell and directed King to change from his tan jumpsuit into a pink jumpsuit as a result of an administrative conviction he had received earlier that day.  (Pack Aff. ¶¶ 3-4, ECF No. 133-12 at 2; Shannon Aff. ¶ 3, ECF No. 133-10 at 2; Ashe Aff. ¶ 3, ECF No. 133-4 at 1-2.)  The defendants aver that King refused this directive, and King concedes in his deposition that he refused to put on the jumpsuit.  (Pack Aff. ¶ 4, ECF No. 133-12 at 2; Shannon Aff. ¶ 3, ECF No. 133-10 at 2; Ashe Aff. ¶ 3, ECF No. 133-4 at 1-2; King Dep. 27:13-17, ECF No. 133-3 at 3.)  Defendant Pack

---

[5]  The court observes that the record contains different spellings of Defendant Seibel's last name.  It appears from the defendants' filings with the court that the correct spelling of his name is "Seibel" and the court will refer to him as such in this Report and Recommendation.



testifies that he gave King multiple directives and that, when King continued to refuse to comply, Pack administered a short burst of chemical munitions at King. (Pack Aff. ¶ 4, ECF No. 133-12 at 2.) Pack avers that King was allowed to decontaminate, and that King was administratively charged and convicted of refusing or failing to obey orders. (Id. at ¶¶ 4-5.)

Applying the Whitley factors to the facts viewed in the light most favorable to King, the court concludes that no reasonable jury could find that the amount of force used was unconstitutionally excessive. Importantly, King acknowledges that he refused the defendants' directives to wear the pink jumpsuit. Accordingly, the undisputed evidence in the record shows, at the very least, that King's failure to comply with the defendants' directives necessitated the use of the mace and that King's disobedience threatened the order of the institution and the safety of those officers and inmates inside it, necessitating the use of force. See Bailey, 736 F.2d at 969-70; Whitley, 475 U.S. at 321. Thus, even viewing the record in the light most favorable to King, no reasonable jury could find that the defendants' perception of King's recalcitrant behavior and the risk his behavior posed was unreasonable. See Whitley, 475 U.S. at 321-22.

King appears to summarily argue in response to the defendants' motion that a "lesser means" of force could have been used. (Pl.'s Resp. in Opp'n, ECF No. 137 at 3.) In examining the second factor under Whitley, the court observes that a total of approximately 39 grams of chemical munitions was deployed by Defendant Pack during the incident. (Pack Aff. ¶ 4, ECF No. 133-12 at 2; Incident Report, ECF No. 133-14 at 5.) As stated above, the use of chemical munitions by prison officials is not a violation of a prisoner's constitutional rights when used appropriately. See Williams, 77 F.3d at 763. The small amount discharged weighs in favor of the efforts of Defendant Pack to temper the severity of the force applied and the commensurate relationship between the need

for force and the amount used.  See Whitley, 475 U.S. at 321; see, e.g., Kemp v. Drago, C/A No. 1:12-1481-JFA-SVH, 2013 WL 4874972, at *7 (D.S.C. Sept. 11, 2013) (adopting Report and Recommendation finding the use of 72 grams of chemical munitions, while significant, justified where a prisoner failed to comply with an order); Robinson v. S.C. Dep't of Corr., C/A No. 5:10-2593-HMH-KDW, 2012 WL 851042, at *7 (D.S.C. Mar. 23, 2012) (adopting Report and Recommendation finding "two short bursts of chemical munitions" totaling 31 grams to be a small amount that was not unconstitutionally excessive); Plummer v. Goodwin, C/A No. 8:07-2741-TLW-BHH, 2010 WL 419927, at *7 n.4 (D.S.C. Jan. 29, 2010) (adopting Report and Recommendation finding the use of 33.5 grams of chemical munitions to be "not constitutionally relevant").  As well, it indicates that the burst was rendered to restore order and institutional security rather than maliciously or sadistically to cause harm.  Id. at 322.  Accordingly, applying both the Whitley and Bailey factors, the court concludes that no reasonable jury could find that the use of mace was not a good faith effort to restore and maintain prison discipline when faced with a recalcitrant prisoner but rather was used maliciously and sadistically to cause physical harm.  See Wilkins, 559 U.S. at 37; see also Whitley, 475 U.S. at 321-22; Bailey, 736 F.2d at 969-70; Williams, 77 F.3d at 763.

**b.     April 23, 2014**

King also generally alleges that, on April 23, 2014, while housed at LCI, Defendant Boatwright used excessive force when he sprayed King with chemical munitions.  (Am. Compl., ECF No. 5-1 at 6.)  In support of their motion for summary judgment, the defendants have provided incident reports, affidavit testimony from Defendant Boatwright, and King's deposition testimony.

Applying the Whitley factors to the facts viewed in the light most favorable to King, the court concludes that no reasonable jury could find that the amount of force used was unconstitutionally



excessive. King testifies that, on the date of the incident, his cellmate had covered the window to their cell, and that as a result, King and his cellmate were placed on cell restriction for the remainder of the day. (King Dep. 144, ECF No. 133-3 at 12; Boatwright Aff. ¶ 5, ECF No. 133-9 at 2.) Defendant Boatwright provides further details regarding the incident when he avers that, despite King's being on cell restriction, Boatwright found King out of his cell and gave King multiple directives to return to his cell. (Boatwright Aff. ¶ 5, ECF No. 133-9 at 2.) Boatwright further avers that, when King repeatedly refused to comply with Boatwright's directives, Boatwright pulled out his canister of chemical munitions and again gave King a directive to return to his cell. (Id.) Boatwright testifies that King initially complied until they reached King's cell door, at which time King removed his glasses, slid them under the cell door, and confronted Boatwright in an "aggressive manner." (Id.) Boatwright further testifies that he again gave King a directive to go into his cell and, when King refused, Boatwright administered a short burst of chemical munitions. (Id.) Boatwright avers that he then gave King a directive to get onto the ground, and when King refused, Boatwright administered a second burst of chemical munitions. (Id.) Boatwright swears that, at that time, King laid on the floor and was handcuffed and then taken to the medical department. (Id.) Importantly, King acknowledges in his deposition testimony that he refused Defendant Boatwright's directives, but appears to argue that the directives were "not proper" because he had received permission from the warden to be outside of his cell. (King Dep. 144, 157-58, ECF No. 133-3 at 12-14.) As a result of this incident, King was administratively charged and convicted of threatening to inflict harm on/assaulting an employee. (Disciplinary Report, ECF No. 133-14 at 10.)

The undisputed evidence in the record shows that King's unruly behavior and subsequent confrontation with Defendant Boatwright necessitated the use of the mace. Bailey, 736 F.2d at 969-

70.  Even though King appears to argue that he may have had permission to be out of his cell, no reasonable jury could find that Boatwright's perception of King's recalcitrant behavior and the risk King's behavior posed was unreasonable.  See Whitley, 475 U.S. at 321-22.  Accordingly, applying both the Whitley and Bailey factors, the court concludes that no reasonable jury could find that Boatwright's use of force was not a good faith effort to restore and maintain prison discipline when faced with a recalcitrant prisoner but rather was used maliciously and sadistically to cause physical harm.  See Wilkins, 559 U.S. at 37; see also Whitley, 475 U.S. at 321-22; Bailey, 736 F.2d at 969-70; Williams, 77 F.3d at 763.

### 4.    Conditions of Confinement

"The Constitution does not mandate comfortable prisons;" however, "the treatment a prisoner receives in prison and the conditions under which he is confined are subject to scrutiny under the Eighth Amendment."  Farmer v. Brennan, 511 U.S. 825, 832 (1994) (internal quotations and citations omitted).  To state a claim that conditions of confinement violate constitutional requirements, "a plaintiff must show 'both (1) a serious deprivation of a basic human need; and (2) deliberate indifference to prison conditions on the part of prison officials.' " Strickler v. Waters, 989 F.2d 1375, 1379 (4th Cir. 1993) (quoting Williams v. Griffin, 952 F.2d 820, 824 (4th Cir. 1991)).

To demonstrate that the conditions deprived him of a basic human need, a plaintiff must allege that officials failed to provide him with humane conditions of confinement, such as "adequate food, clothing, shelter, and medical care, and reasonable measures to guarantee the safety of the inmates."  Farmer, 511 U.S. at 832.  As to the second prong, a prison official is deliberately indifferent if he has actual knowledge of a substantial risk of harm to a prisoner and disregards that substantial risk.  Id. at 847; see also Parrish v. Cleveland, 372 F.3d 294, 302 (4th Cir. 2004) (stating



the standard of deliberate indifference requires actual knowledge and disregard of a substantial risk of serious injury). Further, a plaintiff must demonstrate that he suffered a serious or significant physical or mental injury as a result of the challenged condition or demonstrate a substantial risk of such serious harm resulting from his exposure to the challenged conditions. See De'Lonta v. Angelone, 330 F.3d 630, 634 (4th Cir. 2003); Strickler, 989 F.2d at 1380-81. However, "[n]o Federal civil action may be brought by a prisoner confined in a jail, prison, or other correctional facility, for mental or emotional injury suffered while in custody without a prior showing of physical injury." 42 U.S.C. § 1997e(e).

### a.    Defendant McPherson

King alleges that Defendant McPherson—the supply manager at LCI—violated his constitutional rights when she issued King a jacket that did not have pockets or a hood and was "insufficient" for cold weather. (Am. Compl., ECF No. 5-1 at 6-7.) King alleges that, because of this deprivation, he shivers when walking to locations such as the mailroom and law library. (Id. at 6.)

In support of their motion for summary judgment, the defendants have provided affidavit testimony from Defendant McPherson, who avers that when King requested the issuance of a new jacket in November 2014 because he had lost his previous one, McPherson issued King the current jacket in SCDC's inventory at that time. (McPherson Aff. ¶¶ 4-5, ECF No. 133-5 at 2.) McPherson avers that, although King requested a replacement of the type of jacket he had lost, that style had been discontinued by SCDC. (Id. at ¶ 5.) McPherson further avers that thermal underwear and toboggan hats may be purchased from the canteen. (Id. at ¶ 8.)



Notwithstanding King's allegations regarding his conditions of confinement, King has failed to demonstrate that he suffered a serious or significant physical or mental injury, or that there was a substantial risk of such serious harm, as a result of the alleged conditions.  See De'Lonta, 330 F.3d at 634 (stating that only an "extreme deprivation," which is a "serious or significant physical or emotional injury resulting from the challenged conditions," or substantial risk thereof, will satisfy the objective component of an Eighth Amendment claim regarding conditions of confinement). Courts in this district have held that an inmate's "mere exposure to cold air" when he has the protection of clothing or blankets is insufficiently serious to rise to the level of a constitutional violation.  See Williams v. Ozmint, C/A No. 3:08-4139-GRA, 2010 WL 3814287, at *7 (D.S.C. Sept. 23, 2010).  Moreover, King has not presented any evidence that Defendant McPherson or any other defendant acted with deliberate indifference with regard to his allegations.  See Farmer, 511 U.S. at 837; Strickler, 989 F.2d at 1379.  Accordingly, viewing the evidence in the light most favorable to King, there is no evidence that King's allegations rise to the level of a constitutional violation.

### b.    Defendants Barnes, McElveen, and Pack

King also alleges that his constitutional rights were denied when Defendants Barnes, McElveen, and Pack denied him food after King refused to wear a pink jumpsuit.  (Am. Compl., ECF No. 5-1 at 7.)  King appears to allege that, in light of his noncompliance and pursuant to SCDC policy, he was supposed to be placed in security detention, which requires that food be delivered to his cell.  (Id. at 7, 46.)

In support of their motion for summary judgment, the defendants have provided affidavit testimony from Defendants McElveen, Barnes, and Pack.  These defendants aver that, as a result of



King's disciplinary conviction in March 2013 and pursuant to SCDC policy, King was required to wear a pink jumpsuit any time he left his cell. (McElveen Aff. ¶¶ 3-5, ECF No. 133-13 at 2; Barnes Aff. ¶¶ 3-5, ECF No. 133-11 at 2; Pack Aff. ¶¶ 3, 6-7, ECF No. 133-12 at 2.) It is undisputed that King initially refused to do so. (Id.; King Dep. 103, 120, ECF No. 133-3 at 9-10.) The defendants provide testimony that, at first, King went on a hunger strike to protest having to wear the pink jumpsuit and refused to go to the cafeteria to get his meals. (McElveen Aff. ¶¶ 3-5, ECF No. 133-13 at 2; Barnes Aff. ¶¶ 3-5, ECF No. 133-11 at 2; Pack Aff. ¶¶ 3, 6-7, ECF No. 133-12 at 2.) In arguing that the defendants should not have required him to go to the cafeteria but instead should have brought food to him in his cell, King references SCDC policy OP-22-14, which states in pertinent part, "If the inmate continues to refuse [to wear the pink jumpsuit] s/he will be subject to being placed in security detention." (ECF No. 1-1 at 46.) The defendants testify, however, that this sanction is discretionary. (McElveen Aff. ¶ 6, ECF No. 133-13 at 2; Barnes Aff. ¶ 6, ECF No. 133-11 at 2; Pack Aff. ¶ 8, ECF No. 133-12 at 2.) Accordingly, they aver that King's refusal to wear the pink jumpsuit to the cafeteria resulted in him voluntarily missing meals rather than the defendants' deliberate withholding of food. (Id.)

"Allegations of inadequate food for human nutritional needs . . . [may be] sufficient to state a cognizable constitutional claim, so long as the deprivation is serious and the defendant is deliberately indifferent to the need." King v. Lewis, 358 F. App'x 459, 460 (4th Cir. 2009) (citing Bolding v. Holshouser, 575 F.2d 461 (4th Cir. 1978), and Wilson v. Seiter, 501 U.S. 294 (1991)). In determining whether an inmate's constitutional rights have been violated, a court may consider the "amount and duration of the deprivation of food." Lockamy v. Rodriguez, 402 F. App'x 950, 951 (5th Cir. 2010) (finding that the deprivation of six meals in a fifty-four hour period was

insufficient to state a claim absent an allegation of injury as a result of missing meals); see also Berry v. Brady, 192 F.3d 504, 506-08 (5th Cir. 1999) (finding the deprivation of eight meals over a seven-month period was insufficient to state an Eighth Amendment claim because plaintiff failed to raise any specific allegations of physical harm).

Notwithstanding King's allegations regarding his conditions of confinement, he has failed to demonstrate that he suffered a serious or significant physical or mental injury, or that there was a substantial risk of such serious harm, as a result of the alleged conditions. See De'Lonta, 330 F.3d at 634 (stating that only an "extreme deprivation," which is a "serious or significant physical or emotional injury resulting from the challenged conditions," or substantial risk thereof, will satisfy the objective component of an Eighth Amendment claim regarding conditions of confinement). The defendants have provided unrefuted testimony that King had access to his meals but voluntarily chose to not go to the cafeteria to receive them. (McElveen Aff. ¶ 6, ECF No. 133-13 at 2; Barnes Aff. ¶ 6, ECF No. 133-11 at 2; Pack Aff. ¶ 8, ECF No. 133-12 at 2.) The defendants have also provided affidavit testimony refuting King's misconstrued interpretation of SCDC policy that King believed entitled him to have food delivered to his cell. (Id.) On this record, no reasonable jury could find that the defendants acted with deliberate indifference with regard to King's allegations and violated his constitutional rights. See Farmer, 511 U.S. at 837; Strickler, 989 F.2d at 1379. Accordingly, the defendants are entitled to summary judgment on these claims.

### 5.    Fourth Amendment—Unlawful Search

"The Fourth Amendment protects against unreasonable searches and seizures." United States v. Castellanos, 716 F.3d 828, 832 (4th Cir. 2013) (internal quotation marks omitted). "A government agent's search is unreasonable when it infringes on an expectation of privacy that society



is prepared to consider reasonable." Id. (internal quotation marks omitted). To "demonstrate a legitimate expectation of privacy, [a plaintiff] must have a subjective expectation of privacy, and that subjective expectation of privacy must be objectively reasonable." Id. (internal quotation marks and citations omitted).

### a. Defendant Washington

King alleges that he was subjected to repeated "visual anal cavity searches" by Defendant Washington, in violation of his constitutional rights. (Am. Compl., ECF No. 5-1 at 8.) Body cavity searches of both convicted prisoners and pretrial detainees are not violative of the Fourth or Eighth Amendments if conducted in a reasonable manner and if not motivated by a punitive intent. Bell v. Wolfish, 441 U.S. 520, 558-61 (1979). In determining the reasonableness of a search, the court must consider "the scope of the particular intrusion, the manner in which it is conducted, the justification for initiating it, and the place in which it is conducted." Id. at 559. Additionally, the court must take into consideration the "legitimate interests that stem from [the government's] need to manage the facility in which the individual is detained," "accord[ing] wide-ranging deference [to prison officials] in the adoption and execution of policies and practices that in their judgment are needed to preserve internal order and discipline and to maintain institutional security." Id. at 540, 547.

The defendants have presented affidavit testimony from Defendant Gregory Washington, who avers that, as part of his job duties and pursuant to SCDC policy, he conducted strip searches of inmates, including of King in December 2011. (Washington Aff. ¶¶ 1-3, ECF No. 133-8 at 1-2.) Washington avers that strip searches are "performed as a safety precaution and to check for contraband that an inmate may have hidden in or on his person." (Id. ¶ 3, ECF No. 133-8 at 2.) Washington further testifies that strip searches are performed when there is suspicion of contraband,



after an inmate has visited with someone outside the institution, after being transported out of the institution for any reason, and "when an inmate is placed in a holding cell prior to speaking with a shift supervisor to ensure the inmate has no dangerous contraband on his person." (Id.) Washington avers that the searches are necessary "to maintain institutional security and preserve internal order and discipline." (Id.)  Additionally, Washington explains that a strip search—which includes requiring an inmate to bend over, spread his buttocks, and cough—differs from a body cavity search, which involves a physical inspection of an inmate's cavity and, per SCDC policy, can only be conducted by medical personnel. (Id. at ¶ 4.) Washington avers that he has never performed a body cavity search on King. (Id. at ¶ 5.)

King has failed to present evidence from which a reasonable jury could find that any strip search conducted on King was performed for any reason other than in response to security and safety concerns.  Accordingly, the defendants' motion for summary judgment should be granted as to this claim.

### b.    Defendant McFadden

King also alleges that Defendant McFadden violated his Fourth Amendment rights when she came to King's cell unannounced and found King masturbating. (Am. Compl., ECF No. 5-1 at 3-4.) King appears to argue that he is entitled to privacy in his cell. (Id.)

An inmate does not have a reasonable expectation of privacy in his prison cell, and, accordingly, "the Fourth Amendment's proscription against unreasonable searches does not apply." Hudson v. Palmer, 468 U.S. 517, 525-26 (1984). "The recognition of privacy rights for prisoners in their individual cells simply cannot be reconciled with the concept of incarceration and the needs and objectives of penal institutions." Id. at 526.  King has failed to presented a legitimate



expectation of privacy and, accordingly, on the record presented, the defendants are entitled to summary judgment on this claim.

## RECOMMENDATION

For the foregoing reasons, the court recommends that the defendants' motion for summary judgment should be granted.  (ECF No. 133.)

Paige J. Gossett
UNITED STATES MAGISTRATE JUDGE

August 12, 2016
Columbia, South Carolina

*The parties' attention is directed to the important notice on the next page.*

**Notice of Right to File Objections to Report and Recommendation**

The parties are advised that they may file specific written objections to this Report and Recommendation with the District Judge. Objections must specifically identify the portions of the Report and Recommendation to which objections are made and the basis for such objections. "[I]n the absence of a timely filed objection, a district court need not conduct a de novo review, but instead must 'only satisfy itself that there is no clear error on the face of the record in order to accept the recommendation.'" Diamond v. Colonial Life & Acc. Ins. Co., 416 F.3d 310 (4th Cir. 2005) (quoting Fed. R. Civ. P. 72 advisory committee's note).

Specific written objections must be filed within fourteen (14) days of the date of service of this Report and Recommendation. 28 U.S.C. § 636(b)(1); Fed. R. Civ. P. 72(b); see Fed. R. Civ. P. 6(a), (d). Filing by mail pursuant to Federal Rule of Civil Procedure 5 may be accomplished by mailing objections to:

Robin L. Blume, Clerk
United States District Court
901 Richland Street
Columbia, South Carolina 29201

**Failure to timely file specific written objections to this Report and Recommendation will result in waiver of the right to appeal from a judgment of the District Court based upon such Recommendation.** 28 U.S.C. § 636(b)(1); Thomas v. Arn, 474 U.S. 140 (1985); Wright v. Collins, 766 F.2d 841 (4th Cir. 1985); United States v. Schronce, 727 F.2d 91 (4th Cir. 1984).